IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREL MAURICE SMITH, SR., | No. 2:05-cv-01276-JKS |
| Petitioner, | MEMORANDUM DECISION |
| vs. | |
| JAMES D. HARTLEY,[1] Warden (A), Avenal State Prison | |
| Respondent. | |

Petitioner Darrel Maurice Smith, Sr., a state prisoner proceeding *pro se*, filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Smith is presently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Avenal State Prison.

I. BACKGROUND/PRIOR PROCEEDINGS

In September 1984 Smith, following a "slow plea" submission,[2] was convicted in the Sacramento County Superior Court of second degree murder with a firearm enhancement. Smith was sentenced to an aggregate term of 17 years to life.

On December 18, 2002, Smith made his fourth appearance before a panel of the Board of Prison Terms ("Board"), which denied him parole, finding that he was not suitable for parole and would not be found suitable for a period of three years. Smith administratively appealed the decision of the panel, which affirmed the panel decision July 8, 2003. On October 23, 2003,

---

[1] James D. Hartley, Warden (A), Avenal State Prison, is substituted for Kathy Mendoza-Power, Warden, Avenal State Prison. Fed. R. Civ. P. 17(d).

[2] "Under California law, a 'slow plea,' or slow plea of guilty, is an agreed-upon disposition of a criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment." *Boyde v. Brown*, 404 F.3d 1159, 1164 n.5 (9th Cir. 2005). In this case, it was submitted to the court, sitting without jury, on the transcript of the preliminary hearing, testimony adduced at a hearing to determine the admissibility of a confession, and the tape of the statement made to the police.

Smith filed a habeas petition in the Sacramento County Superior Court that was denied in a reasoned written decision on November 12, 2003. On December 15, 2003, Smith filed a habeas petition in the California Court of Appeal, which was summarily denied without opinion or citation on December 30, 2003. On January 14, 2004, Smith petitioned the California Supreme Court for a writ of habeas corpus, which was summarily denied without opinion or citation to authority on December 1, 2004. Smith timely filed his petition for habeas relief in this Court on June 22, 2005 (file stamped June 27, 2005).

## II. GROUNDS RAISED/DEFENSES

In his petition, Smith has raised 10 Grounds: (1) the California Superior Court erred in denying his habeas petition; (2) Petitioner's "slow plea" is tantamount to a guilty plea; (3) he did not waive his right to a jury trial; (4) he was not informed of the consequences of his "slow plea"; (5) he has a constitutional right to compel the state to comply with his plea agreement; (6) he must be permitted to withdraw his guilty plea; (7) plea agreements are contracts the state must honor; (8) he was entitled to parole release at his 2002 hearing; (9) the Board failed to follow controlling legal principles so disproportionately that it violated his constitutional rights; and (10) lack of evidence to support a finding of suitability.

The Court previously dismissed, without prejudice, the petition to the extent that it challenged his conviction.[3] Respondent was ordered to respond to the remaining grounds challenging the Board's December 18, 2002, decision denying him parole. Respondent concedes that Smith has exhausted his state court remedies as to the remaining grounds and that the petition is not subject to any other procedural bar.

## III. STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the

---

[3] Docket No. 47.

state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable, "not just incorrect."[7]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[8]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[9]

In applying this standard, this Court reviews the last reasoned decision by the state court,[10] which in this case was that of the Sacramento County Superior Court.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[11]

---

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[5] *Williams v. Taylor*, 529 U.S. at 412.

[6] *Carey v. Musladin*, 549 U.S. 70, ___, 127 S.Ct. 649, 654 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. ___, ___, 128 S.Ct. 743, 746-47 (2008) (per curiam).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[8] *Schriro v. Landrigan*, 550 U.S. ___, ___, 127 S.Ct. 1933, 1939 (2007).

[9] *Fry v. Pliler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[10] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

[11] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

To the extent that Petitioner raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[12]  A federal court must accept that state courts correctly applied state laws.[13]  A petitioner may not transform a state law issue into a federal one by simply asserting a violation of due process.[14]  Nor may a federal court issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[15]

## IV.  DISCUSSION

Ground 8:  Entitlement to Parole Release.

*Sass v. California Board of Prison Terms*,[16] settled the issue that a California prisoner has a liberty interest in parole protected by the procedural safeguards of the Due Process Clause of the Fourteenth Amendment.[17]  It is equally as well settled that a decision of the parole board to deny a prisoner parole must be supported by some evidence in the record.[18]  Smith challenges the refusal of the Board to grant him a parole on the basis that the decision was based primarily, if not wholly, upon the nature of his commitment offense.[19]  In *Biggs v. Terhune*,[20] the Ninth

---

[12] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[13] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) (*overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002)).

[14] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[15] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[16] 461 F.3d 1123, 1128 (9th Cir. 2006)

[17] Respondent candidly acknowledges that his contrary position is foreclosed by controlling authority and only raises it in order to preserve the issue for appeal.

[18] *Sass*, 461 F.3d at 1128–29 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985))

[19] Under California law, "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." *In re Rosenkrantz*, 29 Cal.4th 616, 682 (2002).  The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that
(continued...)

Circuit indicated that although the commitment offense provides some evidence of unsuitability for parole, "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the system and could result in a due process violation." It is this principle that Smith has drawn into issue in this case.

There is, as this Court has noted in other cases, a lack of clear guidance from the Court of Appeals on this issue. Where the line of demarcation that triggers a violation of the Due Process Clause referred to in *Biggs* lies is unknown. *Irons v. Carey*,[21] appears to make it dependent, at least in significant part, upon the gravity of the commitment offense, how heinous it was, *e.g.*, the extent to which the prisoner acted in callous disregard for human life, the degree of depravity or cruelty shown, and the nature of the victim. The holding in *Irons* established a bright-line test of sorts, *i.e.*, a crime that is more heinous, atrocious, callous, or cruel than that committed by Sass,[22] is sufficient to satisfy due process, despite evidence of exemplary behavior in prison and

---

[19](...continued)
demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. *In re Dannenberg,* 34 Cal.4th 1061, 1071, 1095 (Cal. 2005). "Factors beyond the minimum elements of the crime include, (1) the commitment offense, where the offense was committed in 'an especially heinous, atrocious or cruel manner'; (2) the prisoner's previous record of violence; (3) 'a history of unstable or tumultuous relationships with others'; (4) commission of 'sadistic sexual offenses'; (5) 'a lengthy history of severe mental problems related to the offense'; and (6) 'serious misconduct in prison or jail.' " *Irons v. Carey*, 505 F.3d 846, 851 n.4, citing Cal. Code. Regs., tit. 15 § 2402(c).

[20] 334 F.3d 910, 916–17 (9th Cir. 2003)

[21] 505 F.3d 846, 853–54 (9th Cir. 2007).

[22] Sass was convicted of second degree murder, gross vehicular manslaughter, hit and run death, causing injury while driving under the influence, and felony drunk driving, arising out of an automobile accident in which a death occurred. He was sentenced to 15 years to life with the possibility of parole. Prior to his conviction of second degree murder, Sass had been convicted on seven separate occasions for DUI.

Irons was convicted of second degree murder and sentenced to 17 years to life in prison with the possibility of parole. After an angry confrontation with the victim, Irons went to his room, retrieved his gun, and then went to the victim's room where he fired 12 rounds into the victim and, after the victim complained that he was in pain, stabbed him twice in the back. He then wrapped the victim's body in a sleeping bag and left it in the room for the ten days it took him to procure a car. Irons then took the body to the coast, weighed it down, and disposed of it in the ocean. Prior to his conviction, Irons had no criminal record.

evidence of rehabilitation and the lack of a prior criminal record.[23] *Irons* did not, however, address the question posed by *Biggs*—at what point in time does the nature of the commitment offense becomes so attenuated that it no longer constitutes "some evidence"?[24]

From *Biggs*, *Sass*, and *Irons*, a district court can glean certain guiding principles in ruling on a California prisoner's application for a writ of habeas corpus addressed to the denial of parole. First, a California prisoner has a liberty interest in parole protected by the Due Process Clause. Second, the test to be applied is whether some evidence indicates a parolee's release unreasonably endangers public safety, not whether the findings of the Board are supported by evidence. Third, at least until such time as the prisoner has served the minimum sentence imposed, denial of a parole date solely upon the basis of the commitment offense more likely than not does not violate the Due Process Clause. Fourth, a district court must examine the record for sufficient evidence to support the findings of the Board that release unreasonably endangers public safety. Fifth, the extent to which the gravity of the commitment conviction is attenuated by time, assuming that all other factors properly considered are either neutral or positive, is dependent upon (1) the nature of the commitment offense and (2) there has been a significant time lapse since the offense was committed.

In this case, the crime occurred nearly 20 years before the hearing and, unlike Biggs, Sass, and Irons, Smith had, although barely, completed his minimum term. The California Court of Appeal on direct appeal described the underlying offense:[25]

> The shootings stemmed from defendant's unhappiness because Tracie Connor, a woman by whom he had a child, no longer wished to see him. They had lived together over a four-year period and she had previously moved out on more than one occasion. On January 5, 1984, the day of the shootings, Tracie Connor and David Holmes, the homicide victim, had a dating relationship. About 8 o'clock that night, defendant came to the Sacramento home where Tracie Connor lived with her mother, Linda Nance, to see Connor. He seemed upset, but

---

[23] 505 F.3d 853–54.

[24] In *Irons*, as well as *Sass* and *Biggs*, the determination denying parole was made prior to the time that the petitioner had served the minimum term to which he was sentenced.

[25] Findings that this Court must accept unless shown to be incorrect by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra*. A burden Smith has failed to carry.

there was no "Bogart anger." He did not appear intoxicated or under the influence of drugs, and spoke calmly. On his arrival Nance told him to behave properly and he replied that he merely wanted to talk briefly to Connor and leave. Nance sat on the couch with a "Mr. Bell" while defendant and Connor had a conversation nearby. David Holmes was in a back bedroom with Nance's son. After about two to five minutes Holmes entered the room. As he passed by Connor he touched the right side of her face, then sat down. Nance heard Connor say, "What are you going to do, shoot me?" Defendant had a pistol which he pointed first at Connor's chest, then her leg. He shot her in the leg. Defendant shot Nance in the upper leg, then shot Holmes in the head as he attempted to stand up. Defendant ran out the front door. Holmes died.

This crime, found to constitute second degree murder, is certainly more heinous and atrocious than the second degree murder convictions found sufficient in *Sass* and *Irons* to constitute a sufficient basis for the Board's decision. As was the panel in *Irons*, this Court is bound by *Sass* and must find that Smith's due process rights were not violated.

Ground 10:  Lack of Evidentiary Support.

Smith's argument that the decision of the Board lacks evidentiary support lacks merit. Smith focuses on a single factor, the nature of his crime, as being the basis for denial of parole; however, as the decision of the Sacramento County Superior Court found, the Board tailored its decision to the totality of Smith's individual circumstances. While continued reliance on the unchanging circumstances of Smith's offense, standing alone, may have implicated his liberty interest in parole,[26] that did not happen in the course of the Board's 2002 parole denial.

The Superior Court found, in addition to the specific offense of which he was convicted, which is not in dispute:[27]

> Petitioner also claims that he was erroneously denied parole on December 18, 2002, by the Board of Prison Terms. Petitioner first claims that the denial of parole was based solely on his commitment offense, and under Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, as well as In re Ramirez (2001) 94 Cal.App.4th 549 and other recent California appellate decisions, this presents a due process question. Not so. Not only did the Board of Prison Terms panel rely on the commitment offense in denying parole, the panel also relied on numerous other factors, including his prior escalating pattern of criminal conduct, based on his

---

[26] *Biggs*, 343 F.3d  at 916,

[27] Findings Smith has failed to rebut by clear and convincing evidence.

prior conviction for possession of a weapon, which gave him the message not to carry a handgun yet he did so and that resulted in the murder; his only limited amount of programming while incarcerated; his eleven serious disciplinaries while incarcerated, including threatening staff and physically assaulting an officer in 1986, a 1990 disrespect towards staff, a 1990 positive drug urinalysis, violence in 1993, another positive drug urinalysis in 1995, and as recently as 2001 an offense of threatening staff.  As the panel so aptly concluded, this clearly evidences a pattern of petitioner not being able co control his rage or temper, or even his drug use which had been a contributing factor to the crime.  Indeed, petitioner's disciplinary history alone would support the decision to deny parole to petitioner.  All that is required to uphold the Board's decision is "some evidence" to support its conclusion (Superintendent v. Hill (1985) 472 U.S. 445, 456-457; In re Powell (1988) 45 Cal.3d 894, 903–904; Ramirez, supra), and that is more than amply met in this case.

Under *McQuillion v. Duncan*,[28] these unquestionably constitute "'some evidence' having 'some indicia of reliability.'"

In light of *Hill*, *Irons*, *Sass,* and *McQuillion*, this Court cannot say that the decision of the Sacramento County Superior Court, which applied the same "some evidence" test applied in *Hill*, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[29]  Nor can this Court find that the Superior Court unreasonably applied the correct legal principle to the facts of the Smith's case, *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.[30]

To the extent that Smith argues that the failure to set a parole date is contrary to the provisions of California Penal Code § 3041 and title 15 of the California Code of Regulations, that argument, involving the proper interpretation and application of a state statute and regulations, is an issue beyond the purview of this Court in a federal habeas proceeding.  The question to be decided by a federal court on petition for habeas corpus is not whether the Board

---

[28] 306 F.3d 895, 904 (9th Cir.2002) (applying standard outlined by the Supreme Court in *Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

[29] 28 U.S.C. § 2254(d).

[30] *Lockyer–Williams–Schriro.*

committed state-law error in relying upon the commitment offense.  Rather, the federal, constitutional question is whether such reliance is so arbitrary or capricious as to constitute an independent due process violation under the Fourteenth Amendment.[31]  Even if the California Superior Court erred in applying California law, which it did not,[32] that error was not so arbitrary and capricious as to constitute a violation of due process.

## V.  CONCLUSION AND ORDER

Smith is not entitled to relief under any ground raised in his petition.  Accordingly,

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** no Certificate of Appealability is required.[33]

The Clerk of the Court to enter final judgment accordingly.

Dated:  September 26, 2008.

                                                s/ James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                United States District Judge

---

[31] *See Richmond v. Lewis*, 506 U.S. 40, 50 (1991).

[32] Under California law, a proportionality analysis is not required until after a prisoner is found suitable for parole.  *In re Dannenberg*, 34 Cal.4th 1061, 1097–98 (2005); *In re Stanworth*, 33 Cal.3d 176, 183 (1982); Cal. Code Reg., tit. 15, § 2280.

[33] *Rosas v. Nielsen*, 428 F.3d 1229, 1231–32 (9th Cir. 2005).